## Commonwealth *vs.* Jayson A. Tavernier.

No. 09-P-127.

Hampden. November 4, 2009. - March 1, 2010.

Present: Kantrowitz, Dreben, & Rubin, JJ.

*Practice, Criminal,* Plea, New trial. *Constitutional Law,* Plea. *Due Process of Law,* Plea.

Discussion of the requirement that a criminal defendant's plea of guilty be intelligently and voluntarily made. [353]

A District Court judge hearing a criminal defendant's motions for a new trial, in which the defendant sought to vacate his pleas of guilty to multiple charges contained in seven separate criminal complaints for criminal activity spanning a time period of three and one-half years, did not err in finding that the defendant intelligently pleaded guilty to two charges contained in one complaint, where the record demonstrated that defendant sufficiently admitted to the facts offered to support those charges and clearly understood from the outset of the proceeding that he was pleading guilty to multiple criminal charges [354-358]; however, the judge erred in denying the motions with respect to the remaining charges, where those pleas entered after the defendant stated that he could not remember the facts recited by the prosecutor [358-360]; after colloquies that were either deficient [360-361] or unclear on the record [361]; or after the judge failed to query the defendant about the charge at issue [361-362] or to inquire if the defendant agreed with the facts as recited by the prosecutor [362-363].

Complaints received and sworn to in the Springfield Division of the District Court Department, one each on November 29, 2000; October 31, 2001; February 11 and June 20, 2002; September 22, 2003; and March 3 and April 13, 2004, respectively.

Following pleas of guilty, motions for a new trial, filed on March 17, 2008, were heard by *Jacques C. Leroy,* J.

*John M. Thompson* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

Kantrowitz, J. Because of an inadequate plea colloquy, we

are constrained to vacate nearly a score of guilty pleas. As two of the pleas were minimally sufficient, we affirm as to those charges.

*Background.* On May 12, 2004, the defendant, Jayson Tavernier, pleaded guilty to multiple charges contained in seven separate criminal complaints for criminal activity spanning a three and one-half year time period, and received an exceedingly generous fourteen-month sentence in a house of correction.[1]

In 2007, the defendant was indicted in the United States District Court for the District of Massachusetts and charged with a single sale of fifty grams or more of "crack" cocaine. Facing enhanced sentencing as a result of his earlier convictions, the defendant filed, on March 17, 2008, motions for a new trial on each of the seven complaints on which he had entered guilty pleas in 2004. The same judge who had accepted the guilty pleas heard and subsequently denied all the motions for a new trial. The defendant filed timely appeals from the denial of the motions on each complaint.

On appeal, the defendant argues that the motion judge abused his discretion or committed an error of law because the contemporaneous record did not establish that the defendant (1) personally articulated a guilty plea to any of the charges of which he was convicted and (2) understood the law in relation to the facts of any of the charges of which he was convicted. In its brief, the Commonwealth concedes that the majority of the convictions should be vacated, but argues that the defendant intelligently pleaded guilty to seven of the charges.

In his denial of the defendant's motions, the judge below characterized the entire colloquy as "completely adequate." The record reveals otherwise; our review indicates that only the two November 28, 2000, charges, possession of a class B substance with intent to distribute and resisting arrest, barely pass scrutiny. The guilty pleas on the other charges must be vacated.

Prior to exploring the seven complaints, a brief overview of the applicable law is in order. As the law is fairly well known in this area, we need not go into it in any great depth.

---

[1] The prosecutor recommended a sentence of eighteen months; defense counsel suggested nine months. The judge sentenced the defendant to a total of fourteen months, with the sentences to run concurrently.

*Discussion.* A defendant's guilty plea must be intelligently and voluntarily made. *Commonwealth* v. *Furr,* 454 Mass. 101, 106 (2009). "A defendant's plea is intelligent when made with understanding of the nature of the charges (understanding of the law in relation to the facts) and the consequences of his plea (the legal consequences and constitutional rights he forgoes by pleading guilty rather than proceeding to trial); it is voluntary when free from coercion, duress, or improper inducements." *Commonwealth* v. *Hiskin,* 68 Mass. App. Ct. 633, 638 (2007).

a. *Intelligence of the plea.* "There must be an explanation by the judge or defense counsel of the elements of the crimes charged or an admission by the defendant to the facts constituting those crimes. . . . This requirement can be satisfied in one of several ways: (1) by the judge explaining to the defendant the elements of the crime; (2) by counsel's representation that [he] has explained to the defendant the elements he admits by his plea; or, (3) by the defendant's stated admission to facts recited during the colloquy which constitute the unexplained elements." *Commonwealth* v. *Correa,* 43 Mass. App. Ct. 714, 717 (1997). See *Commonwealth* v. *Sherman,* 451 Mass. 332, 335 (2008); *Commonwealth* v. *Hiskin,* 68 Mass. App. Ct. at 639. Here, neither the judge nor defense counsel[2] explained the elements of any of the charges; thus, we must determine, under the third prong, whether the defendant "explicitly admit[ted] to or acknowledge[d] any of the facts underlying the charges" as necessary to plead guilty. *Commonwealth* v. *Correa,* 43 Mass. App. Ct. at 719-720.

b. *Plea colloquy.* At the start of the plea colloquy the judge reviewed the various rights the defendant was relinquishing with his "pleading guilty." The judge ascertained that no one either forced the defendant to plead guilty or promised him anything "in order to convince you that you should plead guilty." The judge further ascertained that the defendant was not under the influence of alcohol or drugs. After this recitation, the judge asked the defendant whether he still wished to plead guilty, to which the defendant responded affirmatively.[3]

---

[2]A single question to defense counsel asking whether he had explained the elements of the various crimes to the defendant would have sufficed. Why it was not asked is puzzling.

[3]The defendant also challenges the colloquy as constitutionally deficient on

At that point the judge asked the prosecutor to provide a factual summary for each of the charges. What transpired during this aspect of the case comprises the heart of the defendant's appeal before us.

1. The November 28, 2000, charges (complaint 0023CR012797)[4]:

- possession of class B with intent to distribute (sentence of fourteen months)

- in a school zone (nol prossed)

- resisting arrest (six months concurrent)

Regarding these charges, the prosecutor informed the court that after receiving complaints from residents concerning drug sales, the police conducted surveillance at a location known to be in a high crime area. They saw the defendant engage in three hand-to-hand cash transactions with drive-up or walk-up customers, including one in which prior to the transaction he reached down the front of his pants and removed something, then manipulated it briefly before placing it back in his pants. Several minutes later, the officers approached the defendant, and after a "brief struggle," he was placed in custody. The officers seized $162 and a "rock bag of cocaine," which was in the defendant's underwear. The prosecutor concluded by stating that this substance "was tested and came back as a class B substance."

---

the basis that the judge never specifically advised the defendant of his right to confront and cross-examine witnesses. "A guilty plea, otherwise meeting the requirements of being intelligent as well as voluntary, is not rendered to be constitutionally inferior by the fact that one of the specific legal rights such as the waiver of the right to a trial, waiver of the right to confront witnesses, and the waiver of the right to self-incrimination was not brought to the defendant's attention." Smith, Criminal Practice and Procedure § 23.57 (3d ed. 2007), citing *Commonwealth v. Andrews*, 49 Mass. App. Ct. 201, 202 n.2 (2000) (failure to inform defendant of waiver of right against self-incrimination not necessarily fatal to plea); *Commonwealth v. Bowler*, 60 Mass. App. Ct. 209, 212 (2003) (same); and *Commonwealth v. Dummer*, 47 Mass. App. Ct. 926, 927-928 (1999) (complete failure to inform defendant of any of three constitutional rights required vacating guilty pleas). The defendant, as did his attorney, signed seven green sheets indicating that he was aware of, and relinquishing, these rights.

[4]For the sake of clarity, the final disposition is included.

The judge then asked the defendant, "Now, do you agree, Mr. Tavernier, that that is the way things occurred that day?" to which the defendant replied, "Yes, I do." The judge also asked counsel for the defendant whether he would like to add anything. It appears that counsel had nothing to add,[5] and the judge moved on to the next complaint.

"Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." *Commonwealth* v. *Hiskin*, 68 Mass. App. Ct. at 639, quoting from *Brady* v. *United States*, 397 U.S. 742, 748 (1970). Where a defendant admits "to facts recited during the colloquy which constitute the unexplained elements," *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 717, the omission of an element of the crime is not fatal to the plea. See *Commonwealth* v. *McGuirk*, 376 Mass. 338, 347 (1978), cert. denied, 439 U.S. 1120 (1979) (admission that he struck first blow sufficient to satisfy element of intent to inflict injury); *Commonwealth* v. *Sherman*, 451 Mass. at 336-338 (admission he "forcibly raped" victim sufficient to satisfy missing element — sexual intercourse — based on common meaning of term); *Commonwealth* v. *Wiswall*, 43 Mass. App. Ct. 722, 723 (1997) (phrase "assault with intent to kill" in guilty plea self-explanatory on element of intent); *Commonwealth* v. *DeCologero*, 49 Mass. App. Ct. 93, 97 (2000) (judge's use of term "marketing," along with statement as to amount Commonwealth would be required to prove, made cocaine trafficking charge self-explanatory). Compare *Commonwealth* v. *Hunt*, 73 Mass. App. Ct. 616, 622 (2009).

Here, the defendant sufficiently admitted to the offered facts to support his guilty pleas on the November 28, 2000, charges. The two basic elements for conviction of possession with the intent to distribute cocaine are (1) knowingly possessing the drug and (2) intending to transfer it physically to another person. *Commonwealth* v. *Clermy*, 37 Mass. App. Ct. 774, 778, *S.C.*, 421 Mass. 325 (1995). While the judge, somewhat awkwardly, referred to the charge as "possession to distribute B," leaving out the word "intent," the recitation of the charge together with

---

[5] While the transcript of the hearing indicates that counsel's response was inaudible, it appears from the context of what was said immediately after that he had no objections.

the prosecutor's rendition of the facts adequately conveyed all of the elements. First, the prosecutor stated that the "rock bag of cocaine" found in the defendant's underwear tested positive "as a class B substance." Thus, the defendant knew that "B" meant cocaine. The defendant never contested the fact that the substance was indeed cocaine; by agreeing with the facts as recited by the prosecutor, he confirmed that he knowingly possessed cocaine at the time of his arrest.

Further, the defendant also agreed that the police had observed him conducting three drug sales. He never suggested that he was doing anything other than what the prosecutor stated, nor did he assert that the cocaine was for his personal use. Compare *Commonwealth* v. *DeCologero*, 49 Mass. App. Ct. at 97 ("[T]here is adequate evidence that the defendant understood the crime of trafficking in cocaine. . . . [T]he prosecutor recited a lengthy narrative of the evidence against the defendant, which encompassed all of the elements the Commonwealth was required to prove. Although it is true that the defendant never explicitly admitted to these facts, he nonetheless listened to them and subsequently chose to plead guilty"), with *Commonwealth* v. *Andrews*, 49 Mass. App. Ct. 201, 204 (2000) ("The facts as recited were ambiguous as to the defendant's intention in possessing the cocaine; the possession of 2.73 grams of cocaine, even packaged in eleven envelopes, does not, without more, clearly tend towards showing an intent to distribute").

Here, the charge was self-explanatory, and the defendant's acknowledgment that he both possessed and sold the class B substance "necessarily impl[ies] that the defendant acted with the requisite intent." *Commonwealth* v. *McGuirk*, 376 Mass. at 347. This was sufficient to sustain the guilty plea to the charge of possession of cocaine with intent to distribute.

Similarly, the prosecutor recited sufficient facts to support the guilty plea to the charge of resisting arrest. "A defendant resists arrest if 'he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another.' " *Commonwealth* v. *Grant*, 71 Mass. App. Ct. 205,

208 (2008), quoting from G. L. c. 268, § 32B(*a*), inserted by St. 1995, c. 276. "The standard for determining whether a defendant understood that he was being arrested is objective — whether a reasonable person in the defendant's circumstances would have so understood." *Commonwealth* v. *Grant, supra.*

Here, just minutes after the defendant completed multiple drug transactions, officers approached him, and, after a brief struggle, he was placed in custody. Any reasonable person would have known that he was being arrested, and the defendant acknowledged as much when he agreed with the prosecutor's recitation of the facts. In any event, the charge is self-explanatory, and the defendant did not challenge the prosecutor's recitation of those facts, including the fact that he used force against officers effecting a lawful arrest.[6] Thus, the guilty plea to the resisting arrest charge was valid.

The defendant further argues that these pleas were invalid because he did not formally plead guilty to each charge individually. We disagree. The absence of the phrase, "I plead guilty," or "guilty," after each charge is inconsequential where "the circumstances compel the conclusion that the defendant did enter a plea of guilty and that the plea was accepted by the judge." *Commonwealth* v. *Cavanaugh*, 12 Mass. App. Ct. 543, 545 (1981).

The defendant clearly understood from the outset of the hearing that he was pleading guilty to multiple criminal charges.[7] The guilty pleas immediately preceded the prosecutor's recitation of the facts for the charges of possession of a class B substance with intent to distribute and resisting arrest, and the judge explained that he would listen to the facts and then ask the defendant whether he disputed them. After the recitation of

---

[6]We note that later in the same hearing, after the prosecutor recited the facts in support of a charge of assault and battery on a police officer during an arrest (October 30, 2001), the defendant contested the facts ("I was just arrested. I didn't push anybody"), and the charge was dismissed.

[7] THE COURT:     "All right. So, Mr. Tavernier, do you understand what you're doing this morning?"

THE WITNESS: "Yes, sir."

THE COURT:     "Do you understand that you're pleading guilty to several criminal charges?"

THE WITNESS: "Yes, sir."

facts for those charges, the defendant, as described above, admitted to the facts as recited by the prosecutor.[8]

Since the circumstances compel the conclusion that the defendant intended to plead guilty at least to the first charges whose facts were recited at the hearing, the fact that he did not formally utter the word "guilty" following the recitation of each charge is not fatal. The defendant's convictions rest "on his admission that he is in fact guilty." *Commonwealth* v. *DelVerde*, 398 Mass. 288, 294 (1986), quoting from *Henderson* v. *Morgan*, 426 U.S. 637, 650 (1976) (White, J., concurring).

Additionally, we note that the defendant "was represented by, and had the advice of, able counsel throughout." *Commonwealth* v. *Rodriguez*, 52 Mass. App. Ct. 572, 583 (2001). Furthermore, he signed seven waiver-of-rights, or green, forms acknowledging that he wished to plead guilty. While these forms are not a substitute for a colloquy in open court, *id.* at 575, they are "relevant to whether [the defendant] had actual knowledge of the relevant information and whether he faces an injustice if he is not allowed to withdraw his plea." *Id.* at 583. The defendant pleaded guilty to possession of a class B substance with intent to distribute and to resisting arrest.[9]

2. The October 30, 2001, charges (0123CR011827) included, among other charges, three involving firearms and others for possession of ammunition[10]:

- possession of a firearm and/or ammunition without a

---

[8] THE COURT:   "Now, do you agree, Mr. Tavernier, that that is the way things occurred on that day?"

THE WITNESS: "Yes, I do."

[9]The defendant further argues that the judge failed to allow the defendant to withdraw his plea when he received a longer sentence than requested. "[W]hile compliance with the procedures set out in [Mass.R.Crim.P. 12(c), as appearing in 442 Mass. 1513 (2004),] is mandatory, adherence to or departure from them is but one factor to be considered in resolving whether a plea was knowingly and voluntarily made." *Commonwealth* v. *Rodriguez*, 52 Mass. App. Ct. at 580 (quotation marks omitted). Since the defendant "was offered and accepted a very favorable disposition" and "has provided no plausible evidence that, if fully informed, he would have preferred to go to trial," *id.* at 581-582, this omission does not invalidate the pleas.

[10]At oral argument, the Commonwealth acknowledged the over-all weaknesses of the colloquy for these charges and those that followed.

firearm identification (FID) card (fourteen months concurrent)

- possession of a firearm and/or ammunition without FID card (fourteen months concurrent)

- possession of a firearm and/or ammunition without FID card (fourteen months concurrent)

- possession of a firearm and/or ammunition without FID card (fourteen months concurrent)

- possession of a firearm and/or ammunition without FID card (fourteen months concurrent)

- possession of a firearm and/or ammunition without FID card (fourteen months concurrent)

- resisting arrest (fourteen months concurrent)

- possession of class B with intent to distribute (fourteen months concurrent)

- possession of class D with intent to distribute (fourteen months concurrent)

- assault and battery on a police officer (dismissed)

The prosecutor gave a somewhat detailed recitation of the facts underlying the October 30, 2001, charges. She stated that the police, responding to a report of a shooting, recovered a .40 caliber shell, then followed a lead to a residence. At the residence, the police encountered three individuals, including the defendant; all three attempted to flee, but the police arrested the defendant after a struggle and seized three loaded firearms, one fake firearm, a bullet, marijuana, and cocaine from the residence.[11] The substances appearing to be marijuana and cocaine were tested and came back as class D and class B substances, respectively.

The judge then asked the defendant, "Now, you remember that day, sir?" The defendant responded, "No, I did not." After clarifying that the defendant was contesting the assault and bat-

---

[11] All of the items were in plain view.

tery on a police officer charge ("I was just arrested. I didn't push anybody"), the judge dismissed that charge and moved on to the next complaint without ever seeking acknowledgment of the facts for the remaining charges. The Commonwealth concedes that these pleas should be vacated, and we agree.

3. The February 10, 2002, charges (0223CR001582):

- trespass (filed)[12]

- breaking and entering with intent to commit a misdemeanor (six months concurrent)

The prosecutor presented the facts underlying the February 10, 2002, charges of trespass and breaking and entering with intent to commit a misdemeanor. She stated that the police, responding to a report of a disturbance involving a gun, spoke with a young female who said "she was just at 221 Taylor Street, a beige house, and that the individual pointed a gun at her. She said she was at that place to buy drugs and there were a bunch of people in the house that weren't supposed to — in a house that was supposed to be vacant. The officers proceeded to that address. They spoke with a white female who lived next door. She indicated to them that the dwelling next to that house [was] known as a vacant house and the tenants had moved out more than a month ago. The officers went to the address. They could see a front door window was open, [and] loud music and voices could be heard from inside. [The] [o]fficers observed a number of people inside the house. [The] [o]fficers also observed [that] some of these individuals began to run when their presence became known. At that point, the front door opened, and [the defendant] came out with his hands extended over his mouth, yelling, 'I give up, [inaudible].' "

The judge then asked the defendant, "Do you remember that day?" to which the defendant replied, "Yes." The judge also asked, "Did you live at that place?" and the defendant replied, "No, sir."

We agree with the defendant that the colloquy with regard to the breaking and entering was deficient. There was no evidence of any break, nor any discussion of the intended misdemeanor

---

[12]The defendant did not request that this charge be vacated. As such, it stands.

to be committed. Further, merely asking the defendant whether he remembered that day did not amount to asking him if he admitted to the facts as alleged.

4. The June 20, 2002, charges (0223CR006685):

> - two counts of threats to commit a crime (six months each, concurrent)
>
> - operating a motor vehicle with a suspended license (ten days concurrent)
>
> - speeding (responsible finding; filed[13])

The prosecutor informed the court that on June 20, 2002, the police stopped the defendant for speeding and determined that his license to operate a motor vehicle in the Commonwealth had been suspended. She further stated that while being placed in custody, the defendant threatened two officers with bodily harm.

The judge then asked, "Did you threaten the officers, say I'm going to kick your butt, or something like this?. . . I'm going to kill you; I'm going to kick your butt. Did you — ?" The defendant replied, "No, I didn't say that." After the defendant acknowledged calling the officers names, the judge further queried the defendant: "While you were calling them names: You M-F — tap tap tap tap tap — I'm going to — ba ba ba ba — did you say something like this?" The defendant responded, "Yes, I did," after which the judge said, "Okay. Very good. Now let's move on to the next one."

The Commonwealth concedes that these pleas were invalid. Perhaps indicative of a "you-had-to-be-there" scenario, it is not clear from the record what "tap tap tap tap tap" or "ba ba ba ba" means. In any case, the judge never specifically inquired about the suspended license charge during this exchange, nor did he ask whether the defendant was pleading guilty to the charges. The pleas to counts one, two, and three were invalid.

5. The September 21, 2003, charges (0323CR009072):

> - malicious destruction of property (amended to wanton destruction of property over $250; six months concurrent)
>
> - false name (nol prossed)

---

[13]This was a civil infraction. The defendant does not challenge it.

The prosecutor reported that on September 21, 2003, the defendant allegedly damaged a fence while fleeing from police, who were responding to a report of a shooting. When the prosecutor finished, the judge questioned why the charge was malicious, rather than wanton. After the prosecutor agreed to change the charge to wanton destruction of property, the judge checked to make sure the clerk had made the change and proceeded to the next complaint without querying the defendant about the charge. The Commonwealth concedes the plea on this charge must be vacated, and we agree.

6. The March 2, 2004, charges (0423CR001735):

- breaking and entering in the nighttime with intent to commit a felony (nol prossed)

- assault (twelve months concurrent)

- malicious destruction of property (twelve months concurrent)

- assault for purpose of intimidation (nol prossed)

The prosecutor recited that the police responded to multiple disturbances involving a group of individuals, including the defendant. These individuals shouted threats at the occupants of a house. One of the individuals (not the defendant) damaged the window and handle of the door of the house, then shouted that they were going to the address of one of the other occupants to "bust out all of the windows there."

When the resident of that second address arrived home five minutes later, she found that five windows of her car were smashed. Soon thereafter, the police stopped a car with the defendant inside. After the victims positively identified the defendant, he shouted that he "would come back and take care of all you motherfuckers" in the presence of at least one of the victims.

After the prosecutor concluded, the judge asked, "[D]o [y]ou remember that, sir?" The defendant replied, "Yes, I do."

The Commonwealth argues that the recited facts were sufficient for the assault charge and sufficient to establish the defendant's guilt as a joint venturer on the malicious destruction of property charge. We agree with the Commonwealth that the recited facts were sufficient. The problem is, however, that

the defendant was never asked if he agreed with them. While the judge's question tested the defendant's memory, it did nothing else, thus making the pleas invalid.

7. The April 12, 2004, charges (0423CR003331):

- driving with a revoked license (filed)

- operating unregistered motor vehicle (filed)

- operating uninsured motor vehicle (nol prossed)

- number plate violation to conceal identification (filed)

- inspection sticker violation (filed)

The defendant's motion for a new trial on this complaint only asks to vacate count four, the number plate violation to conceal identification.[14] The prosecutor recited facts regarding the April 12, 2004, charges, but none of the facts explained the number plate violation to conceal identification charge. Further, the defendant was never questioned about any of the facts; the judge asked only one question, recorded as inaudible in the transcript ("And this one [inaudible] is not a [inaudible]"), to which only the prosecutor and defense counsel replied, both affirmatively. Since the defendant never admitted to any facts on the record, this plea was invalid.

*Conclusion.* We strongly suspect that the defendant would have admitted to the majority of the charges if the colloquy had been conducted correctly. For the charges with which he had a problem, the defendant spoke up, resulting in those charges being dismissed. Lastly, *it is readily apparent that he was receiv*ing a very lenient sentence and wished to resolve all of his cases. Perhaps in cases like this — ones in which the defendant is overly anxious to plead — the judge should slow down to ensure that the colloquy is properly performed.[15] Here, for want

---

[14]The Commonwealth argues that since the number plate violation charge was filed, it is not before this court. However, because the transcript of the hearing "does not indicate that the defendant consented to the filing of the conviction[], we shall consider [it]." *Commonwealth* v. *Correa,* 43 Mass. App. Ct. at 715 n.3.

[15]We have stressed numerous times that the use of a carefully drafted and

of a few questions, unasked, we are constrained to vacate the vast majority of the pleas. We recognize the high volume and stress of cases in many District Courts throughout the Commonwealth. Nevertheless, simply and succinctly, plea colloquies must be done correctly.

In sum, the guilty pleas to the November 28, 2000, charges of possession of class B with intent to distribute and resisting arrest were adequate. The remaining pleas were not.

Accordingly, on complaint 0023CR012797, the order denying the motion for a new trial on charges of possession of a class B substance with intent to distribute and of resisting arrest is affirmed. On complaint 0123CR011827, the order denying the motion for a new trial is reversed; the judgments and the guilty pleas are vacated, and the findings of guilt are set aside. On complaint 0223CR001582, the order denying the motion for a new trial is reversed; the judgment on the charge of breaking and entering with intent to commit a misdemeanor is vacated, the guilty plea is vacated, and the guilty finding is set aside.[16] On complaint 0223CR006685, the order denying the motion for a new trial is reversed; the judgments on the charges of threats to commit a crime (two counts) and of operating a motor vehicle with a suspended license are vacated, the pleas are vacated, and the guilty findings are set aside. On complaint 0323CR009072, the order denying the motion for a new trial is reversed; the judgment on the charge of wanton destruction of property is vacated, the plea is vacated, and the guilty finding is set aside. On complaint 0423CR001735, the order denying the motion for a new trial is reversed; the judgments on the charges of assault and malicious destruction of property are vacated, the pleas are vacated, and the guilty findings are set aside. On complaint 0423CR003331, the order denying the motion for a new trial is

___

fully inclusive model questionnaire during the colloquy would minimize, if not wholly avoid, the problems presented in this case. See *Commonwealth v. Colon,* 439 Mass. 519, 530 (2003), citing *Commonwealth* v. *Nolan,* 19 Mass. App. Ct. 491, 501-502 (1985). Such a questionnaire appears in Smith, Criminal Practice and Procedure § 23.55 (3d ed. 2007). We also suggest that counsel should remain vigilant throughout. See *id.* § 23.54. In the long run, the careful colloquy is the most efficient one for the criminal justice system.

[16]As the trespass charge was filed and the motion for a new trial did not seek to vacate that plea, that charge remains on file.

reversed; the guilty plea to a number plate violation to conceal identification[17] is vacated, and the guilty finding is set aside.

*So ordered.*

[17]As the motion for a new trial did not seek to vacate the pleas on the other charges on this complaint, we do not consider them and they remain filed.